CITY OF CLEBURNE V. CLEBURNE WATER, ICE AND LIGHTING CO.

Delivered June 10, 1896.

**1.  Municipal Corporation—Contract for Water Supply—Creation of Debt—
     Sinking Fund.**

A city contracted with M. in consideration of a transfer to him of its water works system: that he should supply it with water for fire purposes free for three years, and after that time at the rate of $25 a year per hydrant for as many hydrants as it should require.  Held, that such contract for the rental of the hydrants was not the

creation of a debt within the meaning of article 2 of the Constitution requiring a levy at that time of a tax to pay interest and a two per cent sinking fund thereon. Following McNeal v. City of Waco, 89 Texas, 83; 33 S. W. Rep., 322.

**2. Same—Current Expenses.**
Such constitutional provision as to the creation of debts does not apply to an obligation payable out of the current revenues for each year of the contract, or out of other funds within the immediate control of the corporation.

APPEAL from Johnson.    Tried below before Hon. J. M. HALL.

*Davis & McKay* and *A. S. Bledsoe*, for appellant.—There being no averment in plaintiff's petition that at the time this debt was created there were any provisions made by the city for the payment of the same, as required by the Constitution, or any fact showing that there was in the city treasury a fund out of· which the parties contemplated that such claims should be paid, the appellants' general demurrer should have been sustained. City of Terrell v. Dessaint, 71 Texas, 772; McNeal v. City of Waco, 89 Texas, 83 (33 S. W. Rep., 323).

*W. F. Ramsey* and *Poindexter & Padelford*, for appellee.—In the absence of any proof or plea that the yearly contract for fire protection was not designed to be paid from the current revenues, or that the current revenues were insufficient to pay such water rate, and such fire protection being in its nature a necessary and usual expense, it will be presumed that the parties acted and contracted with reference to the known ability of the city to pay such water rate from its current receipts, and there is no necessity to aver that provision was expressly made for the payment of such water rates. Corpus Christi v. Woessner, 58 Texas, 452.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellee April 8, 1895, against the city of Cleburne for $1275, for the use of fifty-one water hydrants for fire protection from January 7, 1894, to January 7, 1895. Judgment was rendered for appellee, from which the city appeals.

January 14, 1890, the city of Cleburne was without a sufficient water supply, and had a population of less than 10,000. S. E. Moss on that date submitted to the city council a proposition, which was accepted, whereby Moss agreed to obtain and furnish within twelve months from beginning work, a supply of water sufficient for all purposes, necessities and demands of a city of 20,000 inhabitants; that he would furnish sufficient water to the city for fire protection free of charge for three years from the completion of said system of water supply, and also to furnish to the city sufficient water for protection against fire for the next two years after said three years, at the rate of $25 per fire hydrant per year; and when said Moss should furnish a supply of water named above, then that the city should convey to him the entire water works plant owned by it. It was also provided that whenever the city desired to increase the number of fire hydrants, Moss should put them at the

places selected by the city. This contract was changed in some particulars, not necessary now to notice, about May 13, 1890.

On January —, 1891, after Moss had expended a considerable amount of money in the effort to develop sufficient water for "all the purposes, necessities and demands of a city of 20,000 inhabitants," and finding it impracticable to do so at that time, he entered into another contract with the city, whereby it was agreed, in substance, that the city should release him from that provision of the contract requiring him to furnish a supply of water sufficient for 20,000 inhabitants at once; that the city should convey to Moss said system of water works as contemplated in the original contract; that he should utilize as soon as possible all the water in the old system, as well as in the new well sunk by him, connect the two supplies and use reasonable diligence to develop new supplies of water and to develop the supplies on hand so as to guarantee an ample supply of water for all purposes, and to increase the supply as needed from time to time until the supply should be sufficient for 20,000 population. That a lien should be retained by the city on the water works for the faithful performance of the contract, the lien to be released when the city council should decide that he had obtained a sufficient supply of water for all reasonable purposes and demands and that he had complied with the spirit of the contract. In compliance with this agreement, the city by its duly authorized officers, executed a deed to Moss for the water works January 7, 1891. At that time Moss had on hand a sufficient supply of water for all necessary purposes for a city of the size of Cleburne, and the supply has ever since been ample. In compliance with the contract, the city was furnished water for fire protection free, from January 7, 1891, to January 7, 1894.

The appellee became owner of all the rights of Moss under the contract, and his part of the contract has been fully complied with. The city ordered and used the number of fire hydrants sued for from January 7, 1894, to January 7, 1895, and under the terms of the contract appellee is entitled to pay therefor at the rate of $25 per hydrant, making the amount for which judgment was rendered below.

1. The first assignment presented by appellant is the action of the court in overruling its general demurrer, and under this assignment it is contended that the contract of the city by which Moss was to furnish water for three years for fire protection free of charge, and that for the next succeeding two years, the city should pay $25 per hydrant, was the creation of a debt, and that no provision being made as required by the Constitution for assessing and collecting a sufficient sum to pay the interest and 2 per cent sinking fund, and it not appearing that there was in the city treasury any funds out of which it could be paid, the contract was void.

This position is not well taken. The city had the power to provide for sufficient water for protection of its citizens against fire, and it was its duty to do so. We see no reason why it should not rent fire hydrants and pay an annual rental therefor, when necessary, just as it

would pay any other current expense. Dwyer v. Brenham, 65 Texas, 526; Corpus Christi v. Woessner, 58 Texas, 462; Terrell v. Dessaint, 71 Texas, 773; McNeal v. Waco, 33 S. W. Rep., 322.

The petition of plaintiff below, at which the demurrer was aimed, set up the contract in full between the parties, alleging that the defendant, the city of Cleburne, agreed to pay $25 per hydrant for water used for fire purposes, after the expiration of the three years during which it was to be furnished free of charge; that after said time, to-wit, after January 7, 1894, the plaintiff, at the special instance and request of the city, did furnish to it fifty-one fire hydrants at $25 per hydrant, for the period of one year, from January 7, 1894, to January 7, 1895. The written contract did not bind the city to take any specified number of fire hydrants, but this was left to the discretion of the city council. The contract simply fixed a price at which they were to be furnished. The city could take a greater or a less number for each current year as its current revenue might allow. According to the allegations of the petition, the fifty-one hydrants were furnished with water and necessary pressure for fire protection for that particular year, at the special instance and request of the city; that they were reasonably worth $25 per hydrant, and the city agreed to pay that amount. In the case of McNeal v. Waco, above, Judge Denman ably discusses the question as to what character of debts are meant in Article II of our Constitution. He says: "These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenue, or other funds within their control lawfully applicable thereto, and which would, therefore, at the date of the contract, be an unprovided for liability, and properly included within the general meaning of the word 'debt.' They have no application, however, to that class of pecuniary obligations in good faith intended to be, and lawfully payable out of either the current revenue for the year of the contract, or any other funds within the immediate control of the corporation. Such obligation being provided for at the time of their creation, so that in the due course of the transactions they are to be satisfied by the provisions made, it would be an unreasonable construction of the Constitution to hold them debts within its meaning, so as to require the levy of a wholly unnecessary tax upon the citizens."

"If it should appear from the pleading or the face of the obligation that the subject of the contract was clearly a matter of ordinary expenditure, such as repairing streets or salary of an officer, it would be sufficient to bring it within the exception, for the prima facie presumption would be that such claim was intended to be paid out of the current revenues annually collected for payment of such claims, and it would not be presumed the city had attempted to make contracts in excess of its revenues for the year;   *   *   *."

In this case the claim was for water necessary for fire protection for each year; the city had the power each year to limit the expenditure for

water to a sum within its current revenues, and we cannot presume that it exceeded it for the current year sued for. The contract and all the facts were sufficiently plead.

In the case of the city of Valparaiso v. Gardner, 97 Ill., 1 (one of the cases cited by Judge Denman), the question here involved was fully discussed under the authorities, and the conclusion reached, that no debt was created by the city under a contract for furnishing water annually, until after the water was furnished. The court says: "If it can pay this indebtedness when it comes into existence, without exceeding the constitutional limitation, then there is no violation of the letter, and surely none of the spirit of the Constitution." 97 Ill., 8. See also, 1 Dill. Mun. Corp. (4 ed), sec. 136a; City of Indianapolis v. Gas Company, 66 Ind., 396; East St. Louis v. Gas Company, 98 Ill., 415; Grant v. Davenport, 36 Iowa, 396.

It is not necessary for us to maintain the doctrine to the full extent laid down in the above cited cases, as in the case before us the contract between the parties only fixed the rate per hydrant for which water should be paid by the city for the two years succeeding the three years of free water, and was really a limitation on the charges to be made for those years. The debt was not created until the city designated and accepted the number of hydrants desired, and when this was done, no reason is manifest to us why it should not be paid like any other current expense of the city. The city had the power to limit the number of hydrants to be taken, and thus to bring the expense within its current revenue. Its officers did limit the number for the current year beginning January 7, 1894, and ending January 7, 1895, to fifty-one hydrants. The first assignment is not well taken. Practically the same question is presented, in different form, under the third assignment of error.

2. It is contended by appellant that under the contract between the parties the city should not begin to pay for water until three years after the full performance of the contract by Moss, and the completion of the water supply to a sufficient quantity of water for 20,000 population. As originally made, the contract contemplated that this water supply should be furnished within twelve months. When that time was nearly out, it was found to be impossible to furnish the full amount of water for 20,000 inhabitants, and by mutual agreement a new contract was made by which the contractor was released from that provision, the water works were deeded to Moss, the city retained a lien as security for an ample supply of water, the contract was consummated on that basis, and the city began at once to receive water free under the contract, and did receive it free for three years as agreed upon. The contract only provided for water to be furnished free to the city for three years after the contractor should take charge of the works under the city's deed. This was fully complied with, and by no fair construction of the contract could the city expect to get water free for an indefinite period of time, after it had released the contractor from the provision

requiring him to furnish the full supply of water for 20,000 inhabitants within one year, and had taken a lien upon the works to secure an ample supply of water as needed.

We find no error in the judgment, and it is affirmed.

Writ of error refused.                                    *Affirmed.*