BROUSSARD v. WILSON et al.   (No. 7076.)

(Court of Civil Appeals of Texas. Galveston. Jan. 6, 1916. Rehearing Denied Jan. 27, 1916.)

1. PARTIES &#9096;&#8658;25—MISJOINDER—DEFENDANTS.

In a suit to enjoin a county and a contractor from execution of a contract between them on the ground of its invalidity and to enjoin an issue of bonds by the county with which the contractor could not possibly be connected, there is a misjoinder of parties.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 31, 36-40; Dec. Dig. &#9096;&#8658;25.]

2. APPEAL AND ERROR &#9096;&#8658;1040 — REVIEW— HARMLESS ERROR—RULINGS ON PLEADINGS.

Any error in sustaining a demurrer to the petition on the ground of misjoinder was harmless, where the case was tried as though no demurrer had been sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089-4105; Dec. Dig. &#9096;&#8658;1040.]

---

3. COUNTIES ⟨⟩⟩223 — CONTRACTS—ACTIONS — EVIDENCE.

In a suit to enjoin a contract to furnish a county with oyster shells for road building and repairing, evidence *held* to show that the parties intended that the shell should be paid for out of the current revenues and that there was reasonable ground to believe that such revenues would be sufficient for the purpose.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 360–362; Dec. Dig. ⟨⟩⟩223.]

4. COUNTIES ⟨⟩⟩150—INDEBTEDNESS—CONSTITUTIONAL LIMITATIONS—"DEBT."

A contract to furnish a county oyster shells for road building and repairing to be paid for out of the current revenues of the county did not create a "debt" within Const. art. 8, § 9, limiting county indebtedness.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166, 215–217; Dec. Dig. ⟨⟩⟩150.

For other definitions, see Words and Phrases, First and Second Series, Debt.]

5. COUNTIES ⟨⟩⟩160—FISCAL MANAGEMENT—TRANSFER OF FUNDS.

Under Rev. St. 1911, art. 1440, giving the commissioners' court power to transfer money from one fund to another, provided that the funds collected for jury fees, from sale of estrays, and all occupation taxes, shall be first applied to the payment of the classes of claims named in article 1433, authorizes transfers from the general fund, the jury fund, the contingent fund, and the depositary interest fund, made up from taxes for the preceding year, to the road fund.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 219; Dec. Dig. ⟨⟩⟩160.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Suit by J. J. Broussard against R. W. Wilson and others for injunction. From a judgment for defendants, plaintiff appeals. Affirmed.

W. R. Blain, of Beaumont, for appellant. Williams & Neethe, of Galveston, and Minor & Minor, of Beaumont, for appellees Hanson Sons. Geo. D. Anderson, of Beaumont, for appellees R. W. Wilson and others.

LANE, J. On the 31st day of December, 1914, J. J. Broussard, as a taxpaying citizen of Jefferson county, on behalf of himself and other taxpayers of said county, filed his petition in the district court of said county asking for an injunction to restrain R. W. Wilson, county judge, and the county commissioners, from issuing certain bonds, and also to restrain said judge, commissioners, and Hanson Sons from the performance of a contract entered into between Jefferson county and the defendant Hanson Sons, Incorporated.

By plaintiff's amended petition it is alleged that on the 15th day of August, 1914, the commissioners' court of said county entered into a contract with Hanson Sons to furnish Jefferson county all the oyster shell it would require for a period of one year in the repairing and building its public roads, whether done by the county under contract with other parties or otherwise; that said contract by its terms contemplated the use of approximately 200,000 cubic yards more or less; that said county should take and pay for approximately 150 cars of such shell per month, and such shell should be paid for when the county's funds were available; that all shell delivered up to February 1, 1915, should be paid for not later than March 1, 1915; and that all shell delivered between February 1, 1915, and the expiration of said contract, should be paid for within 30 days after such expiration. It is further alleged, upon information and belief, that although at the time the contract was made it was stated that payment was to be out of the funds of the current year, in which said payments were to be made, derived from taxation for roads and bridges, yet in truth and in fact at the time said contract was made it was well known to said contracting parties that said payments could not be made out of said current funds, for the reason that the road and bridge fund, which was the only current fund of said county out of which such payment could be made, was then largely overdrawn, and previous contracts and indebtedness for the period of time covered by said contract, and during which time said shell was to be furnished, greatly exceeded the amount of revenue that would be received by said county that could be applied to the road and bridge fund; and that it was well known that there were no funds on hand which could be lawfully used in paying for said shell. It is further alleged, from information and belief, that it was understood and agreed by and between the parties to said contract that script of the county would be issued in payment for said shell, which would become a debt chargeable against the future resources of said county derived from taxation for subsequent years, or that the same should be paid for out of a special fund to be derived from an issue and sale of bonds subsequently to be made by said commissioners' court, and for the reasons alleged said contract was void.

He further, however, alleges that, after said contract had been made, the said commissioners' court employed lawyers to examine into its legality and report their conclusion to said court; that said lawyers, after making said examination, did report to said court that in their opinion said contract was void, and thereafter, on the 29th day of August, said court in special session declared said contract void, and therefore repudiated the same; that thereafter said court, after advertising for bids for such shell for road purposes, did, on the 12th day of November, 1914, make and enter into a contract in writing with Hanson Sons, Incorporated, whereby said county was obligated to purchase all the shell that Jefferson county should need for the period of one year for building or repairing roads in said county, whether the work was done by the coun-

ty itself or by contract with other parties, and by said contract it was agreed that the county was to take a minimum of 30,000 cubic yards of shell under said contract. It is also alleged that the prices agreed to be paid Hanson Sons under said contract were higher than the figures given by another party for furnishing such shell. It is then alleged that, although the contract contains a clause to the effect that the minimum quantity of shell to be delivered and paid for thereunder shall be 30,000 cubic yards, it was contemplated and agreed by and between said parties that not less than 200,000 cubic yards of shell were to be delivered and paid for under said contract. It is then alleged that this new contract of November 12, 1915, is void for the reason that at the time it was made all the parties to it knew that the payment for said shell could not be made out of the current funds of the year within which such shell was to be furnished, or out of any other fund in the hands or under the control of said court which could be lawfully used for such purpose, and that the road and bridge fund was largely overdrawn and greatly in debt, and therefore there were no moneys in this fund out of which the payment for said shell could be made; that it was the purpose and agreement of said parties to said contract that script of the county would be issued in payment of said shell and thereby create a debt against said county to be paid out of the future resources of said county to be derived by taxation during subsequent years, or that the same should be paid for out of a bond issue subsequently to be made; and therefore said contract was a fraud perpetrated upon the taxpayers of Jefferson county, and therefore its performance should be enjoined.

It is further alleged that, at the December term of said court for 1914, an order was passed authorizing the issuance of $200,000 road and bridge bonds for the purpose of repairing and constructing roads and bridges; but in fact and in truth said order was made to take care of said Hanson Sons' contract, as was previously understood and agreed between the parties to said contract; that, after this suit was filed, said order for a bond issue was changed and called for an issue of $190,000 only, instead of $200,000 as first made; that it is the purpose of said commissioners' court to have such bonds issued without a vote of the people of said county and contrary to the wishes of the citizens of said county; that the law under which said court proposes to issue said bonds is void; and that any bonds issued by virtue thereof would be illegally issued; and therefore said court and Hanson Sons, Incorporated, should be restrained from carrying out the said contract entered into between them, or any part thereof, and from issuing said contemplated bonds, or taking any further action toward the issuance of the same.

All the defendants excepted to the plaintiff's petition because of misjoinder of parties and causes of action. Further answering, they admitted the making of the new contract on November 12, 1915, in lieu of the first, of date August 15, 1915, so as to come within the restrictions and requirements of the Constitution and laws of the state. They deny that by said contract any "debt," as that term is used in article 8, § 9, of the state Constitution, was created against Jefferson county, or that at the time said contract was made they contemplated making any such debt, or that they contemplated the issuance of bonds to meet the obligations created or which would be created by said contract of November 12, 1915. The county judge, Wilson, and the members of the commissioners' court, say that it was their intention and purpose to pay for the shell contracted for, or so much thereof as would be taken during the continuation of said contract, out of the funds collected for the current year for roads and bridges, or such other funds which were or might come under their control which could be legally so used. They deny that there was any agreement or purpose on the part of any party to said contract to do or perform any of the unlawful acts charged in plaintiff's petition, nor have they or any of them committed any of the wrongs so charged. Said county judge and commissioners say that, while it was not contemplated, at the time said contract was made, that any funds which might arise from the issuance and sale of the bonds mentioned in plaintiff's petition should be used, still, in the event their requirements for shell under said contract should exceed the amount available from the taxes available, some portion of the proceeds of such sale of bonds may be used for that purpose. They also deny that they were able to purchase shell at a less figure than they contracted to pay to Hanson Sons. They further say that the order entered by the commissioners' court of Jefferson county for the issuance and sale of $190,000 bonds was and is in all respects legal and valid and within the power and authority of said court to make; that an order, legal in all respects, was made providing for the levy and collection of a sufficient sum by taxation to pay the interest and create a sinking fund upon said bond issue, at the time said order for bonds was made.

We have gathered the foregoing statement from 73 typewritten pages of pleadings and a voluminous record, and have endeavored thereby to fairly present all the issues involved, and deem it sufficient for that purpose.

The trial court reserved his decision on demurrers and exceptions based upon the misjoinder of parties and causes of action until the case was fully heard, and proceeded to the trial of the case in all its aspects, and after a full hearing rendered the following judgment:

"And it appearing to the court that plaintiff is not entitled to the injunction prayed for by him against any of the parties defendant or any of the relief sought by him, because, first, the exceptions of defendants on the ground of misjoinder of parties and causes of action should be sustained, and, second, because under the law and the evidence plaintiff has wholly failed to make out any case entitling him to an injunction restraining defendants from proceeding with and carrying into effect the contract between Jefferson county, through its commissioners' court and county judge and Hanson Sons, Incorporated, or any other relief prayed for by him, and has wholly failed to make out any case entitling him to an injunction restraining the county judge and county commissioners of Jefferson county from issuing the bonds described in pleadings herein, it is accordingly ordered, adjudged, and decreed by the court that the temporary restraining order entered herein on December 31, 1914, be and the same is hereby in all things dissolved and set aside, that plaintiff's prayer for an injunction herein be with respect to each and all of the parties defendant to this suit in all things denied and refused, that plaintiff take nothing by his suit against the defendants or any of them, and that defendants and each of them go hence without day and recover of plaintiff all their costs in this behalf incurred, for which let execution issue."

From such judgment, J. J. Broussard has appealed.

[1] The first assignment of appellant is as follows:

"The court erred in sustaining the defendants' demurrers and exceptions to plaintiff's petition based upon a misjoinder of parties and causes of action."

Hanson Sons, Incorporated, was and is only concerned with the contract for shell described in plaintiff's petition, and is not shown by the petition to be a party to the proposed bond issue sought to be restrained, nor is it shown that said party could by any possibility be connected with such bond issue, which was exclusively within the jurisdiction of the commissioners' court of Jefferson county. It appears from plaintiff's petition that plaintiff's cause of action, if any, touching the shell contract, is "against all of the defendants," including Hanson Sons, but that his cause of action, if any, relating to the bond issue, is exclusively "against said commissioners' court," and that Hanson Sons is neither a necessary nor proper party to any cause of action which the plaintiff may have relating to the bond issue, and therefore Hanson Sons, Incorporated, was misjoined with the other defendants in this cause, and the trial court did not err in so holding.

[2] But we may also add that, if the action of the trial court in sustaining said demurrer, and the recital of that fact in the judgment, was error, still it was harmless error, as the entire record discloses the fact that the case was tried just as though no demurrer had been sustained and a judgment was finally entered, after a full hearing, denying the injunction prayed for. It follows that, if there was no error in the judgment rendered upon the merits after full hearing, the order of the court sustaining the exceptions as to misjoinder of parties,

183 S.W.—52

etc., if error, would be harmless. We therefore overrule the first assignment.

The remaining assignments may be grouped, and their substance stated as follows:

(1) That the trial court erred in refusing to enjoin the carrying out of the contract made and entered into by and between the commissioners' court of Jefferson county and Hanson Sons, Incorporated, of date November 12, 1914, because said contract created a debt against said county without first making provision for its payment, in violation of article 8, § 9, of the Constitution of the state of Texas, and because it was understood and agreed, at the time said contract was made, that, if the shell contracted for could not be paid for out of other funds under the control of said court, the court would thereafter order the issuance and sale of bonds of said county to pay for said shell, and therefore said contract was and is illegal and void.

(2) That the court erred in refusing to enjoin the issuance and sale of said bonds, because the order for their issuance was for the purpose of applying a part, at least, of the proceeds to arise from this sale, to the payment of the debt which was to accrue under the alleged unlawful contract.

If, in a disposition of the first part of these assignments as grouped, we should hold that the contract in question was one which said commissioners' court had power and authority to make, the second part thereof—that is, the complaint of the issuance of said bonds—cannot be sustained, as the law authorizes the issuance of bonds, without a vote of the people, for the purpose of raising a fund for the repairing and building of roads and bridges, provided such issue shall not exceed the limit of the county's indebtedness fixed by the Constitution, and the undisputed evidence shows that of the 15 cents on the $100 valuation of the taxable property allowed to be levied and collected annually for repairing and building roads and bridges, only 12.5 per cent. of such allowance had been levied for such purposes for 1915, and that there remained 2.95 per cent. thereof which said court had the right to and which it did levy to pay interest and create a sinking fund upon said proposed bond issue of $190,000, and that said 2.95 per cent. of said allowance was sufficient for that purpose.

[3] By the contract complained of, of date November 12, 1914, the county of Jefferson, through its commissioners' court, agreed to take, and Hanson Sons, Incorporated, agreed to sell and deliver for road repairing and building, at places and prices named, all the shell of the character described in the contract, for the period of one year after the commencement of deliveries; the county agreeing to take and pay for a minimum quantity of 30,000 cubic yards, and the minimum price named being 64 cents per cubic yard. The county was to give notice

from time to time of what its requirements would be. Hanson Sons were to have 60 days from the date of the contract within which to begin deliveries. Payments were to be made by the county at regular intervals, either in script or cash, at its option.

The testimony of County Treasurer Williams shows: That the transfers from the general fund, the jury fund, the contingent fund, and the depository interest fund of $52,978.86 in 1914 were wholly out of the taxes of 1913, the last of those transfers having been made on August 11, 1914, and no taxes for the year 1914 being collected until after November 1, 1914, the bulk of the taxes for 1914 not being paid till January, 1915. That no part of the taxes of 1914 went to take care of the indebtedness of 1913; nor did any part of the 1914 taxes go to pay the debts of 1913. That the assessed valuation of all property in Jefferson county for 1914 was about $50,700,000, and the road and bridge fund taxes therefrom for 1914 would be something over $76,000. Of this sum from the road and bridge fund there had come into his hands as treasurer when he testified (January 22, 1915) $25,969.63. This would leave over $50,000 of the total road and bridge fund of 1914 not then collected, or at least not turned over to the treasurer.

County Judge Wilson testified: That he did not remember, when the first contract with Hanson Sons, Incorporated (that of August 15, 1914), was entered into whether there was "any special discussion as to where the money was to come from" to pay for the shell called for by the contract. "We always managed to take care of our liabilities. We did not expect to use 200,000 cubic yards; we expected to get the money to pay for 60,000 cubic yards out of the taxes levied out of the general fund like we always have done. * * * We expected to take care of it; pay for it out of the funds of the county. We expected to pay for it out of the road and bridge fund, the 15 cents levy for maintenance. * * * I thought all the time that we had enough to take care of the contract if we did not reduce the 2 per cent. sinking fund. We generally use from 25,000 to 30,000 cubic yards of shell per year for repairs and different things."

Commissioner Peck testified: The county will have enough money out of the road and bridge fund to pay Hanson Sons, Incorporated, for the shell, if the shell is left on the bank, but without transfer from other funds not enough to lay the shell down on the road. "The intention of the commissioners' court, when they made this contract with Hanson Sons, was that the shell purchased should be paid for out of the available funds arising out of taxation during the year of the contract." That, in his testimony that the current expenses in past years had exceeded the amount of the tax levied for the road and bridge fund, he included all expenses,

for grading and making new roads as well as for repairs, all expenses connected with the county roads. "I believe that during the next year if we did not use shell on new roads, but used it only for maintenance of the old roads, we could stay within the limit of $75,000. If we found it necessary to cut out the new work, we would certainly do so. If we are enjoined from making further transfers into the road and bridge fund, we would cut our cloth accordingly. We would still take care of our obligations with Hanson Sons, throw down our work, put off construction work, and take the amount of money as far as it went and repair the roads as best we could. The taxes available for taking care of this contract will be the taxes of 1914 and 1915. This contract does not terminate until somewhere about the middle of January of next year, and the final payments are not to be made until 30 days after that date."

P. E. Hanson, manager of Hanson Sons, Incorporated, testified: That he made no investigation, when entering into the contract with Jefferson county, as to where the money was coming from to pay for the shell; merely understood the county would have the available funds. "I didn't have any reason to doubt, when I made this contract, that when it became due I would be paid out of some available fund of Jefferson county. There was nothing said, at the time of the making of either of these contracts, as to the source from which the money was to come. I supposed I was dealing with a court that knew what they were doing. I had no reason to doubt that the court intended to pay us out of some available fund." He had no understanding either on August 15, 1914, when the first contract was made, nor on November 12, 1914, the date of the second contract, that the commissioners' court were to issue road and bridge bonds and pay for the shell out of the proceeds of these bonds.

Commissioner Johnson testified: Jefferson county has about 125 miles of shell road. The county must have shell every year to keep these roads up. It is one of the common expenses of the county.

The foregoing is practically all the material testimony with reference to said contract, and we conclude therefrom that the parties to the contract intended that the shell furnished to the county should be paid for out of the current revenue for the year, and that there was reasonable ground to believe that such current revenue would be sufficient for that purpose. The fact that the levy was made on August 10th, and the first contract entered into on August 15th, five days later, we think is a significant circumstance. This contract for supplies must have been one of the first entered into after the court had provided for its current revenues. The court is expressly authorized to purchase all material necessary in "the construction of roads." It does not seem to us important that this

contract is for the purchase of shell "in building or repairing roads." It is evident that the special acts of the Legislature relating to Jefferson county were intended to give ample authority to the commissioners' court in road matters; that there was no attempt to create a charge against future revenues, and, judging from the past year and from the rates levied for the current year, it was reasonably contemplated that there would be sufficient available money out of the current revenues to pay for this shell; that the contract fixed the rate for each cubic yard of shell to be paid for by the county; and that no debt was created until the quantity of shell necessary to meet the requirements of the county had been ascertained, as it would be from time to time by the county during the year and the county within the minimum at least of 30,000 cubic yards has the power to limit the quantity of shell to be taken and thus to bring the expense within its current revenue. The county is to "give notice from time to time of what its requirements will be." The contract further provides:

"Payments hereunder shall be made by second party to first party at regular monthly intervals, either in script or cash at the county's option."

The instant case is unlike Jefferson Iron Co. v. Hart, 18 Tex. Civ. App. 525, 45 S. W. 321. There the suit was to enjoin the collection of certain taxes on the ground that the levy was unnecessary for the purpose for which it was made and was made with the intent of transferring the levy so made to another fund already swelled to its full constitutional limit.

[4, 5] We further conclude that the contract between Jefferson county and Hanson Sons, Incorporated, did not create a "debt" within the meaning of the Constitution, for which provision should be made when it is created or incurred, but belongs to that class of obligations in good faith intended to be lawfully payable out of either the current revenue for the year of the contract, or some other fund within the immediate control of the commissioners' court. By article 1440, Revised Civil Statutes of 1911, it is provided that the commissioners' court shall have power by an order to that effect to transfer the money in hand from one fund to another, as in its judgment is deemed necessary and proper, provided that the funds collected under the provision of article 1438, for jury fees, money collected from sale of estrays, and all occupation taxes, shall be first applied to the payment of the three classes of claims named in article 1433, and shall never be diverted from the payment of such class of claims, unless there is an excess of such funds. This article clearly authorizes such transfers of such of the county's funds to the road and bridge fund as is shown to have been made by the commissioners' court in this case. For authorities on the case as a whole, see Mar-

shall v. Simmons, 159 S. W. 89; Douglass v. Myrick, 159 S. W. 422; Bodenheim v. Lightfoot, 103 Tex. 639, 132 S. W. 468; McNeal v. City of Waco, 89 Tex. at page 88, 33 S. W. 322; City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; City of Cleburne v. Cleburne Waterworks, 14 Tex. Civ. App. 229, 37 S. W. 655; Corpus Christi v. Woessner, 58 Tex. 467; Sandmeyer v. Harris, 7 Tex. Civ. App. 515, 27 S. W. 284; Overall v. Madisonville, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433.

Whether or not said contract was an improvident contract, disadvantageous to the county and advantageous to Hanson Sons, Incorporated, in the absence of proof of actual fraud, is not a question for this court to determine. The Legislature has seen proper to confer upon the commissioners' court the power and authority to make contracts for the repairing and construction of roads within its county, and, so long as said courts make contracts within the restrictions of the Constitution and under the authority of law, it is not for the courts to substitute their judgment for that of the commissioners' court as to the wisdom of such contracts.

After a careful review of the record, briefs of all parties, and a great number of authorities, we have reached the conclusion that the trial court did not err in refusing the injunction prayed for, and therefore the judgment of the lower court is in all things affirmed.

Affirmed.