CITY OF HOUSTON, Appellant,

v.

Wesley WEST et ux., Appellees.

No. 5800.

Court of Civil Appeals of Texas, Waco.

March 9, 1978.

Rehearing Denied March 30, 1978.

Otis H. King, City Atty., Fred Spence, Senior Asst. City Atty., Houston, for appellant.

Andrew J. Lannie, Baytown, William E. Watson, Jr., Houston, for appellees.

OPINION

JAMES, Justice.

This is an eminent domain case. Plaintiff-Appellant the City of Houston instituted condemnation proceedings against Defendant-Appellees Mr. and Mrs. Wesley West to acquire a 20.699 acre tract of land owned by the Wests located within the security fence of William P. Hobby Airport. The City's right to condemn was stipulated and the only contested issue pertained to the value of the property interest taken from the Wests.

Originally, the Wests objected to the award of the special commissioners and the case was for the first time tried in a County Court at Law of Harris County. This first trial was appealed, and the case was reversed and remanded by the Supreme Court of Texas for retrial in a district court because of the necessity for adjudication of issues concerning the title to the subject property. *The City of Houston v. Wesley West* (Tex.1975), 520 S.W.2d 752.

Since then, the cause has been tried in a District Court of Harris County, from which the instant appeal is taken. In this last trial, the trial court submitted two special issues to the jury, to wit:

*Special Issue No. 1*: What do you find from a preponderance of the evidence to be the market value as that term has been defined for you on December 27, 1972, of the 901,647 square feet, or the 20.699 acres of land in question, assuming no right to

taxiway access from said property to the runways of Hobby Airport existed?

*Answer*: $724,465.00.

*Special Issue No. 2*: What do you find from a preponderance of the evidence to be the market value as that term has been defined for you on December 27, 1972, of the 901,647 square feet, or the 20.699 acres of land in question, assuming that the right to taxiway access from said property to the runways of Hobby Airport existed?

*Answer*: $791,465.00.

After jury verdict, the trial court entered judgment in favor of the City for title and possession of the subject property, and awarded judgment in favor of the Wests based upon the jury's answer to Special Issue No. 2, that is, for $791,465.00, less $435,600.00 theretofore awarded by the Special Commissioners and withdrawn by the Wests. From this judgment the City appeals upon 21 points of error. We overrule all of the City's points and contentions and affirm the trial court's judgment.

In 1966 John Mecom and the Wests jointly owned a tract of 51.398 acres that included the 20.699 acres here in question. In that year they conveyed to the City for a consideration of $66,000.00 a ten acre tract out of their jointly owned tract of 51.398 acres identified as "Tract One." In this contract the City agreed to construct and permit the non-exclusive use by Mecom-West of a public taxiway from the Mecom-West property to the runway system of Hobby Airport, subject to these provisions, among others:

"Mecom-West agrees to contribute to the City the total payment received by Mecom-West from the City for Tract One, and in consideration of such contribution, the City agrees to construct a taxiway located as hereinafter stated and meeting the general standard specifications established by the Department of Public Works & Engineering for taxiways at the Houston International Airport. The City is not required to commence construction of said taxiway until it receives written notice from Mecom-West, addressed to the City's Director of Aviation and Director of the Department of Public Works & Engineering advising the City that, either or both, Mecom-West are ready to commence and will commence within sixty (60) days after construction of said taxiway, and will proceed with diligence to complete the construction of facilities on land herein described as Tract Two and/or Tract Four, which facilities will utilize said taxiway, and upon receipt of such notice, together with the contribution by Mecom-West of the net consideration received from the City for payment of Tract One, the City of Houston shall within ninety days subsequent to such receipt of such notice commence the construction of such taxiway and diligently prosecute the same to completion. Said taxiway shall be not less than fifty (50) feet in width and shall connect the present taxiway designated as 'J.' on the William P. Hobby (Houston International) Airport, with the aforesaid property of Mecom-West at a location approximately fifty-five (55) feet west of the northeast corner of Lot 3, of Orange Dale Subdivision.

"Upon the completion of said taxiway, said taxiway may then be used for ingress and egress to the said airports for aircraft patronizing businesses and business establishments and receiving services located on Tract Two and/or Tract Four, herein described, and for no other purpose, and to serve no other land not owned by the City, except with the written consent of City Council."

Subsequently, the remaining 41.338 acres were partitioned by Mecom and the Wests, after which Mecom sold his tract of 20.699 acres to the City. The 20.699 acre tract partitioned to the Wests is the subject of this proceeding.

The requirements of the foregoing contractual provisions of the 1966 contract have not been performed by either Mecom or the Wests or by the City. Neither Mecom nor the Wests have contributed to the City the $66,000 payment or given written notice to the City of their readiness to commence the construction of the requisite facilities. Construction of the taxiway by

the City which could be used by the Wests for ingress and egress to the Airport has not proceeded. Accordingly, the specific provisions of the contract upon which the access right of the Wests to the runway system of the Airport necessarily rests have not been activated.

The contract further provided:

"For so long as taxiway access is permitted and used under the terms of this agreement from TRACTS TWO and FOUR to the Airport and as a covenant running with said land, MECOM–WEST hereby agree with respect to the use of TRACTS TWO and FOUR and any other properties now or hereafter owned by MECOM–WEST (or their successors in interest to TRACTS TWO and FOUR) within the property constituting the William P. Hobby (Houston International) Airport, as follows: . ." Among the items listed were provisions that a) all rules, regulations and orders of the Federal Aviation Agency applicable to use of the airport shall be applicable to the lands of Mecom-West, b) Mecom-West will pay to the City all fees and taxes due on their property and applicable generally to users of the airport and c) certain types of business shall not be conducted on their property.

Article VII of the contract provided that the City had the option to suspend the right of use of the taxiway by Mecom-West or by any of their tenants, lessees or users of the land in question in the event of a continuing breach of the provisions of the contract after notice.

Article VIII provided:

"MECOM and WEST shall have the right to use said taxiway for a period of thirty (30) years from the date that said taxiway is completed and accepted by the CITY as having been completed in accordance with the plans and specifications for the construction thereof, subject to suspension as above provided in Article VII. The CITY shall maintain said taxiway as any other taxiway on said airport. Such taxiway shall not be used by MECOM or WEST, or any assignee, sublessee, licensee or permitee of MECOM or WEST for any purpose or use prohibited either expressly or impliedly under the provisions hereof."

It was established that prior to the institution of these condemnation proceedings the parties had executed conveyances and had substantially performed their obligations under the contract. The only provisions which had not been performed were those pertaining to the construction and use of the taxiway.

Appellant City's points one through four assert that the Wests never met the conditions precedent contained in the option by paying the City the required $66,000.00 for construction of the taxiway, and therefore have no property right, contractual or otherwise, which would afford them the right to have the property valued on the assumption that it had access to the taxiways of Hobby Airport. We do not agree.

As can be seen by a recitation of the foregoing facts, this 1966 contract between Mecom-West and the City was one calling for performance on both sides of several matters. Here, the parties had executed conveyances and had substantially performed their obligations under the contract, and the only provisions which had not been performed were those pertaining to the construction and use of the taxiway. It was not shown that any steps had been taken to have the contract terminated or rescinded by either agreement or court action.

We are of the opinion and hold that on December 27, 1972, the time of the taking of the subject property, the Wests owned a present, vested, unilateral option by virtue of the 1966 contract to have the City construct a taxiway from the subject property to the airport runways.

The Wests' statement of readiness to develop their land and the payment of $66,000.00 to the City are conditions precedent to the City's obligation to construct a taxiway, but are not conditions precedent to the existence of a valid contract. The 1966 agreement is a substantially performed existing, valid contract. Under said contract,

the Wests acquired the *right of access* to the runways of Hobby Airport.

The City did not undertake to repudiate this portion of the 1966 agreement until November 12, 1973, nearly a year after the taking of the subject property. Since the Wests at that time had no title to the land at the time of such attempted repudiation, they could not state that they were ready to develop their land within 60 days after the taxiway was built, or tender the $66,000.00 to the City.

■ A condition precedent in the law of contracts may be either a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. So, such conditions may relate either to the *formation* of contracts or to *liability* under them. *Perry v. Little* (Tyler CA 1964), 377 S.W.2d 765, 769, NRE; Vol. 17A C.J.S. Contracts § 338, pp. 318, 319.

In the case at bar, the conditions precedent, that is, the property owners' notice to the City and payment of the $66,000.00 did not relate to the formation or validity of the contract, but instead related to the City's liability or obligation to construct the runway. The "right to taxiway access" inquired about in Special Issues Nos. 1 and 2 was owned by the Wests from the time the 1966 contract was executed and was owned by them at the time the City took the property on December 27, 1972.

■ The City contends that the 1966 contract was erroneously admitted into evidence, and should have been excluded from the jury's consideration. We do not agree, because such contract spells out the Wests' right of access which is a valuable property right and has a definite bearing on market value of the subject property. See *City of Austin v. Cannizzo* (Tex.1954), 153 Tex. 324, 267 S.W.2d 808; *State v. Reece* (Houston 1st CA 1964), 374 S.W.2d 686, 689, no writ.

Appellant City's points of error six through eight contends that Wests' unilateral option is void as a matter of law be-

cause it violates the rule against perpetuities, in that there is no time limit for the Wests to exercise their option for construction of the taxiway.

We overrule this contention, because in our opinion the rule against perpetuities does not apply. At the time of the taking of the subject property, the Wests were possessed of a fully vested, alienable, contractual right which in no way suspends the alienability of the City's land burdened by this right. All titles have vested, and all that remained was the time when the contractual right of enjoyment of the vested estate should commence. When a right is presently vested, the rule against perpetuities has no application.

■ The rule against perpetuities is that no interest within its scope is good unless *it must vest*, if at all, not later than twenty-one years after some life in being at the creation of the interest, to which is added the period of gestation. *Clarke v. Clarke* (Comm.App.1932), 121 Tex. 165, 46 S.W.2d 658, 661, opinion adopted; *Mattern v. Herzog* (Tex.1963), 367 S.W.2d 312.

■ The word "vest" means to give an immediate, fixed right of present or future enjoyment, and is an interest clothed with a present, legal, and existing right of alienation. 45 Tex.Jur.2d "Perpetuities and Restraints," par. 4, page 101.

■ In the case at bar, the Wests' right of access was fully vested at the time the 1966 contract was executed; therefore the rule against perpetuities does not apply. Also see *Phillips Petroleum Co. v. Lovell* (Amarillo CA 1965), 392 S.W.2d 748, NRE; *Williams v. Humble Pipe Line Co.* (Houston 1st CA 1967), 417 S.W.2d 453, no writ.

Appellant's points nine through twelve assert that the option provision in the 1966 contract is void as being in violation of Article 11, Section 5, Texas Constitution, citing *Brodhead v. City of Forney* (Waco CA 1976), 538 S.W.2d 873, NRE. We overrule this contention, and hold that *Brodhead* is not applicable to the case at bar.

Article 11, Section 5 of the Texas Constitution provides that no debt for any purpose shall ever be incurred in any manner by a city unless, at the same time, provision is made for levying and collecting a sufficient tax annually to pay the interest on the debt and provide a sinking fund of at least two per cent for payment of the debt.

The term "debt" within the meaning of this constitutional prohibition has been defined by our Supreme Court in *McNeill v. City of Waco* (Tex.1895) 89 Tex. 83, 33 S.W. 322 at page 324 as follows:

 "We conclude that the word 'debt' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, *at the date of the contract,* within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation." (emphasis supplied). Also see *City of Cleburne v. Cleburne Water, Ice, and Lighting Co.* (1896), 14 Tex.Civ.App. 229, 37 S.W. 655, writ denied.

As stated before, the Wests were obligated to pay the City $66,000.00 before the City had any duty to construct the taxiway. Mr. E. B. Cape, Director of Public Works and Engineering for the City of Houston, testified that he had prepared a cost estimate as to how much it would cost the City to build the taxiway in April 1966, and such estimated cost at that time was $67,000.00. He further testified that as of December 27, 1972, the date of the City's taking of Wests' property, the cost of building such taxiway was $107,070.00.

■ Applying the rule enunciated in *McNeill* to the case at bar, the "debt" in question was one which *at the date of the contract* (in 1966) was, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of a fund then within the immediate control of the City. In 1966, at the time the contract was made, the cost to the City to build the taxiway was $67,000.00. The City had no obligation

to commence construction thereof until $66,000.00 had been paid to them. The fact that the cost of the runway might go up or down in the future would not in our opinion cause the contract to run afoul of Article 11, Section 5 of the Constitution. Certainly the parties had made a reasonable provision for a fund to defray the cost of the taxiway, acting in the light of their knowledge available to them at the time the contract was made. In *Brodhead,* the City of Forney had made no provision for any funds to meet its contractual obligations, although the City had passed an ordinance in which it recited that provision had been made for such funds. We there held that the contract in question violated Article 11, Section 5 and was therefore void. The facts in *Brodhead* are distinguishable from the facts of the case at bar, where a fund was specifically provided for. We therefore hold that the option provision in question does not violate Article 11, Section 5 of the Texas Constitution.

Appellant City has other points and contentions, all of which we have carefully considered, and overrule same as being without merit.

Judgment of the trial court is accordingly affirmed.