## KEIHL v. CITY OF SOUTH BEND.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1896.)

### No. 293.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL RECEIVERS.

Where the subject-matter of an action involves the acts and rights of a receiver appointed by a federal court, it constitutes a case arising under the laws of the United States, and is therefore within the jurisdiction of a federal court.

2. CONSTITUTIONAL LAW—CITY ORDINANCES—CITY DEBTS.

A city, by ordinance, conferred upon a water company a franchise for 30 years, and agreed to pay a rental of $7.50 per month for each of 25 hydrants to be put in by the company, which rental was to be paid for so many of said hydrants "as were in good order during the preceding month." At the time the ordinance was passed, the city was indebted beyond its constitutional limit. *Held,* that the contract did not, in and of itself, create an indebtedness in contravention of the state constitution, but created a condition upon which a debt might arise; and the debt, having arisen when the city was taxed beyond the limit, was invalid.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This was an action brought by Chester H. Keihl, as receiver of the South Bend Water Company, against the city of South Bend, to recover money alleged to be due said company as rentals for the use of hydrants. The case is brought here by writ of error.

The defendant in error is a municipal corporation created and organized under the laws of the state of Washington, with the power, among other powers, of contracting for the supply of water to the city of South Bend and its inhabitants for protection against fire and for other purposes. The South Bend Water Company is a domestic corporation organized under the laws of the same state, and by the terms of its articles of incorporation was vested with the powers and privileges of constructing and operating a system of waterworks for the supplying of water to the city and its inhabitants for the extinguishment of fires and for domestic purposes. The city, on August 31, 1891, by an ordinance numbered 100, conferred on the water company a franchise for the term of 30 years, to build and operate waterworks for the purposes stated, on certain terms and conditions, and thereby agreed to pay to the company a rental of $7.50 per month during the life of the franchise for each of 50 hydrants to be put in by the company, which rental was to be paid each month for the number of hydrants in good order during the preceding month, by the proceeds of a sufficient tax to be levied and collected annually on all property in the city; such proceeds to be kept in a separate fund called the "Water Fund." The franchise and agreement were accepted by the company September 30, 1891. Litigation between the company and city ensued in respect to the timely and sufficient construction of the works and compliance on the part of the company with the terms of the franchise. The litigation was compromised by a parol agreement to the effect that a new ordinance, limiting the number of hydrants to 25, and such others as the city should choose to order at the same rental and for the same term, should be passed as a substitute for ordinance numbered 100. Such ordinance, known as "Ordinance No. 118," was accordingly adopted on April 3, 1893, and the litiga-

tion between the parties was, in consideration thereof, dismissed. The new ordinance contained a repeal of all prior ordinances on the subject, but was understood by all parties concerned to be a substitute for ordinance numbered 100, and was in all material respects identical therewith, except as to the number of hydrants, and except in the provision for paying rental, in which latter respect it was provided by Ordinance No. 118 that "said rental shall be paid by warrants drawn on the general fund of said city, and a sufficient tax shall be levied and collected annually upon all taxable property in said city to meet the payments for hydrants rented as herein provided, which tax shall be irrepealable during the continuance of the franchise herein granted." Ordinance No. 118 was accepted by the water company in due time, and its works constructed, and put in operation, and were kept in operation by the company until on and after November 1, 1894. It erected 24 hydrants, as required by Ordinance No. 118, and by itself and the receiver of the company, as hereinafter stated, kept them in good order, and supplied water through them to the city from July 7, 1893, to November 1, 1894, the agreed rental for which period was $2,829.40. The water company having mortgaged its plant to one Horace Phillips, a suit in equity was commenced on May 23, 1894, in the United States circuit court for the district of Washington, Western division, by Phillips, as complainant, against the water company, as defendant, for the foreclosure of the mortgages, in which suit the court appointed the plaintiff in the present suit receiver of all the property of the company, with the usual powers and rights of receivers, and, among others, with the right of continuing the business of the company, and of supplying water to the city and to all of its customers, and to collect all sums due or to become due for water so furnished. The receiver so appointed duly qualified, and took possession of the property. On November 5, 1894, the court in which the foreclosure suit was pending directed the receiver so appointed to bring an action in the same court against the city of South Bend to collect all sums of money due from the city for the supply of water to it by the receiver or by the company prior to the receivership, pursuant to which order the present suit was brought. Warrants drawn in the usual form on the general fund of the city were accepted by the company and the receiver for the water rentals for the months antedating April, 1894; and the conclusion of the court below that for this reason the plaintiff below was not entitled to recover for those months is not now questioned by the plaintiff in error, although they were also sued for. No warrants, however, from April 1, 1894, to November 1, 1894, were issued. For those months the rentals amount to $1,260, and are here contended for by the plaintiff in error.

The last regular assessment of the property of the city for city purposes prior to the passage of ordinance numbered 100 was made May 29, 1891, and the aggregate of the assessment was $2,868,825. At that time there was no outstanding indebtedness of the city. In June, 1891, under a provision of the constitution of the state allowing municipal indebtedness to be incurred by popular vote to the amount of 5 per cent. of the assessed valuation of the property within the city for general city purposes, a bonded indebtedness of the city to the extent of $60,000 was duly voted, and bonds therefor issued. The next regular assessment for city purposes was made June 2, 1892, and aggregated $1,908,478. The then general city debt, over and above the bonded indebtedness of $60,000, less cash in the city treasury, was $10,035.73. The next regular assessment for city purposes was made October 16, 1893, and aggregated $520,138. The then general city debt, over and above the bonded indebtedness of $60,000, less cash in the treasury, was $21,536.61. The amount of the indebtedness of the city over and above the bonded indebtedness of $60,000, less cash in the treasury, on the first day of each month from April 1, 1894, to November 1, 1894, both inclusive, being the period for which the water rentals in suit are claimed, was as follows:

| | |
|---|---|
| April 1, 1894, net debt, less cash | $27,956 35 |
| May 1, 1894, " " " " | 26,481 91 |
| June 1, 1894, " " " " | 26,097 12 |
| July 1, 1894, " " " " | 26,051 54 |
| Aug. 1, 1894, " " " " | 26,196 54 |
| Sept. 1, 1894, " " " " | 26,151 83 |
| Oct. 1, 1894, " " " " | 26,421 51 |
| Nov. 1, 1894, " " " " | 26,562 01 |

Charles E. Shepard, for plaintiff in error.

Welsh & Thorp, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The subject-matter of the action, involving as it does the acts and rights of the receiver of the federal court, constitutes a case arising under the laws of the United States, and therefore was within the jurisdiction of the court below. The motion to dismiss the writ of error is, therefore, denied.

The constitution of the state of Washington provides:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose, nor in cases requiring such assent shall the total indebtedness at any time exceed five per centum of the taxable property therein, to be ascertained by the last assessment for state and county purposes previous to the incurring of such indebtedness, except that in incorporated cities the assessment shall be taken from the last assessment for city purposes." Const. art. 8, § 6.

The complaint alleges that the contract upon which the action is based was made April 3, 1893,—the date of the adoption of the ordinance numbered 118. At that time the city of South Bend had an outstanding bonded indebtedness of $60,000. The regular assessment for city purposes next preceding that date was made June 2, 1892, and aggregated $1,908,478. The then general city debt, over and above that evidenced by bonds, less cash in the city treasury, was $10,035.37; making the aggregate amount of the city indebtedness at the time of the making of the contract sued on $70,035.37,—far in excess of the constitutional limit to the indebtedness of the city. If, therefore, the effect of the contract declared on between the South Bend Water Company and the city of South Bend was itself the attempted creation of an indebtedness on the part of the city for water to be supplied to the city and its inhabitants by the water company, it was clearly void, as being in contravention of the express provision of the constitution of the state. That provision constitutes an absolute limitation upon the power of the city to contract any indebtedness for any purpose whatever beyond the limit specified, except by virtue of the vote of the people to be affected. Lake Co. v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; Doon Township v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220.

The contract here involved provided that the water company should put in the city 25 and such other hydrants as the city should choose to order for the supply of water, and that the city would pay to the company, as rental, during the period of 30 years, $7.50 each month for each of the hydrants provided for that was in good order during the preceding month; such rental, according to the contract, to be provided for by a sufficient tax "levied and collected

annually upon all taxable property in said city to meet the payments for hydrants rented as herein provided, which tax shall be irrepealable during the continuance of the franchise herein provided," and to be paid by warrants drawn on the general fund of the city.

We are unable to see how this contract can be properly said to have created an indebtedness against the city at the time of its execution. There is at least one element of uncertainty about it that renders it impossible to fix upon, or even estimate, what amount the city may become indebted in under its provisions; for the rental provided for is only to be paid for such hydrants as were in good order during the month preceding the time for the payment of the rental. If none of them were in good order during that period, nothing would become payable from the city therefor under the contract. If some were in good order and others not, for the rental of only those that were in good order would the city be liable. Certainly, under such circumstances as these, it seems unreasonable to hold that an indebtedness arose against the city at the time of the execution of the contract. If so, in what amount? It is impossible for any one to say. It is only in the event the company supplies water by means of the specified hydrants, and in the event they are kept in good order, that an indebtedness therefor on the part of the city arises; and then only at the rate of $7.50 a month for each of the hydrants that were in good order during the preceding month. We are of opinion that the contract in question cannot be properly held to have in and of itself created an indebtedness in contravention of the constitution of the state. It provided, however, for conditions upon which an indebtedness against the city might arise. If, when such indebtedness would otherwise arise, the city was already indebted in an amount equal or exceeding the constitutional limit, it would fall within the constitutional prohibition, and never acquire any validity; for all contracts are made subject to constitutional as well as statutory provisions, and in this case the South Bend Water Company contracted with knowledge of the fact that by the constitution of the state, of which the city of South Bend formed a part, it was provided that the city should not, for any purpose, become indebted in any manner to an amount exceeding $1\frac{1}{2}$ per centum of the taxable property of the city, according to the last preceding assessment roll, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose. In the present case there was no such assent, and the facts show that at the time the indebtedness sued for would otherwise have arisen the city was already indebted far beyond $1\frac{1}{2}$ per centum of the taxable property of the city according to the last preceding assessment roll. Judgment affirmed.