FARMERS STATE BANK OF CONRAD, PLAINTIFF, *v.* CITY OF CONRAD ET AL., DEFENDANTS.

(No. 7,462.)

(Submitted July 2, 1935. Decided July 11, 1935.)

[47 Pac. (2d) 853.]

416

*Mr. W. E. Arnot,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. D. W. Doyle,* for Defendants, submitted a brief; *Mr. Charles J. Dousman,* Assistant Attorney General, and *Mr. Doyle* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding by which the plaintiff seeks to enjoin the city of Conrad, a municipal corporation, its mayor, and city council, and the State Water Conservation Board of the state of Montana, and the members of such board from entering into a contract by which the conservation board will install a pipe-line to connect ''Lake Francis,'' an artificial lake located approximately seven miles from the city's reservoir, with such reservoir, to furnish the city's water from that source in lieu of the supply now being obtained from wells.

The complaint alleges the corporate existence of the plaintiff and of the defendant city, and makes the city, its mayor, and the members of its council, and the State Water Conservation Board and the chairman with the members of such board defendants in the action. Attached to the complaint, and made a part thereof, is Exhibit B, a resolution of the city council of the city of Conrad. The parts of the resolution that are pertinent here, are, in substance, as follows: The city of Conrad is the owner of its water plant and distributing system supplying water to its inhabitants; its water plant consists of wells located approximately eleven miles from the city; a pumping system at the wells; a wooden pipe-line extending from the wells to a reservoir approximately seven miles from the wells and four miles

from the city; an iron pipe-line from the reservoir to the city and a distributing system in the city. The cost of pumping the water from the wells into the wooden pipe-line and repairs to the pipe-line cost, respectively, $7,000 and $3,375 annually. The wooden pipe-line is twenty-five years old, in "bad condition needing constant repair and may become wholly useless at any time"; an adequate water supply is available to the city at Lake Francis which is approximately seven miles from the city reservoir, if a pipe-line is constructed from the lake to the reservoir; by obtaining the city's water supply from the lake, the cost of pumping and repair of the wooden pipe-line can be eliminated, and a saving of operating expense to the city can be made of approximately $4,075 by buying water from the Water Conservation Board; the cost of a pipe-line from the lake to the city reservoir is estimated at $86,000; the financial condition of the city is such that it cannot borrow the money to install such pipe-line. The resolution then recites as follows:

"Whereas, upon application of said City to the State Conservation Board of the State of Montana, the said State Water Conservation Board has offered to enter into a contract with the City of Conrad, whereby said State Water Conservation Board will construct a cast iron pipe line from said Lake Francis to said city reservoir and thereafter sell water wholesale to the City of Conrad, the City of Conrad agreeing to purchase from said State Water Conservation Board all water required by said City for a period of thirty (30) years and to pay therefor, out of the gross revenues from the sale of water to its inhabitants, as an expense of operating said city water system, the sum of Six Thousand ($6,000) Dollars per year for a period of thirty (30) years or until the sum of Eighty-six Thousand ($86,000.00) Dollars with interest on deferred payments at the rate of 3% per annum has been paid, and upon the payment thereof the said State Water Conservation Board shall transfer said pipe line to said city, and

"Whereas, there is no other way by which said city can procure an adequate water supply and the present system, because of deterioration, may become wholly useless at any time, it is

necessary that and advisable that the said proposition of said State Water Conservation Board be accepted.

"Therefore, it is hereby resolved that the said proposition of said State Water Conservation Board aforesaid be accepted and that said city enter into a contract with said board agreeing to purchase wholesale from said State Water Conservation Board all water required by said city and to be distributed to its inhabitants thru its water distributing system for a period of thirty (30) years and to pay to said State Water Conservation Board for such the sum of Six Thousand ($6,000.00) Dollars for thirty years or until said city has paid the said State Water Conservation Board the sum of $86,000.00 with interest on all deferred payments at the rate of 3% per annum, and that the sum of $6,000.00 per year be paid out of the gross receipts from the sale of water to the inhabitants of said city as an expense of operating said city water system before the payment of the net revenue from said water system upon the outstanding water bonds heretofore issued by said city, said contract to provide that upon the payment of said sum and interest said city shall be the owner of said pipe line."

No other evidence of the proposed arrangements or contract between the city and the water conservation board is before us.

The complaint further alleges that on July 1, 1922, the defendant city "made and executed and sold a series of water bonds in the sum of $180,000 in denominations of one thousand dollars each, for the purpose of procuring a water supply and a water system for the city to be owned and controlled by the city"; that the bond issue was duly authorized under that provision of the Constitution which provides that municipalities may exceed the three per cent. limit of indebtedness if authorized by the legislative assembly for the purpose of installing a sewerage system or procuring a water supply, where the water supply is owned and controlled by the municipality and the revenues thereof devoted to the payment of the debt incurred in procuring the same. The plaintiff further alleges that it is the owner and holder of one of the bonds issued as referred to above, and that such bond is still outstanding and unpaid. It is further

alleged that the action taken by the city council of the defendant city referred to in the resolution adopted by the city council, and if the election called by the city council authorizes the city council to enter into the contract with the Water Conservation Board, will result in loss and injury of the plaintiff; that if the officials are not restrained from entering into such contract, the plaintiff will be injured by reason of the payment of the $6,000 annually to the Water Conservation Board out of the proceeds of water sales, as the balance of such revenues, after such expenditure, will not be sufficient to pay the interest on the plaintiff's or any of the other outstanding bonds as such interest accrues, or to pay the principal of the bonds at maturity.

The answer of the defendant city admits the allegations of the complaint, but alleges other facts that traverse the contention of the plaintiff that the amount of revenue derived from the water plant under the arrangement proposed between the city and the Water Conservation Board will result in any injury whatever to the plaintiff, but, on the contrary, will enable the city to realize out of the saving in operating costs, and from increased sales of water to meet the demand of the inhabitants of the city of Conrad additional revenue to greatly increase the present net revenues realized from the water plant.

To this answer the plaintiff replied, and it appears from such reply that plaintiff abandoned its own estimate of the possible increase in revenues under the arrangement proposed, and adopted the estimates given by the defendant city in its answer. As a result of this admission, the case is before us on practically an agreed statement of facts.

The proposed contract between the city and the Water Conservation Board is to be made pursuant to the provisions of Chapter 35 of the Extraordinary Session of 1933–34, as amended and amplified by Chapters 95 and 169 of the 1935 Session Laws. In the case of *State ex rel. Normile* v. *Cooney, Governor,* ante, p. 391, 47 Pac. (2d) 637, we carefully analyzed and defined the powers and duties of the State Water Conservation Board, as provided in the chapters of the Session Laws just referred to, and in so far as any powers of that board are brought in question in

the instant case, we deem it unnecessary to do more than refer to the decision in the *Normile Case,* supra. It then becomes only necessary to determine the powers of the city and its legal ability to enter into the contract under consideration.

Plaintiff's first contention is that the proposed arrangement or contract "is in violation of the provisions contained in sections 3 and 27 of Article XIII of the Constitution of the State of Montana."

We see no application of the provisions of section 3 of Article XIII to the questions before us. There is no section 27 of Article XIII, and we assume that counsel refers to section 6 of Article XIII. Section 6 contains the limitation of three per cent. on municipalities prohibiting their incurring indebtedness in excess of such 3 per cent. limit for any purposes except to install a sewerage system or procure a water supply, as heretofore mentioned, and then only after an election is held as provided by law authorizing the municipality to incur such indebtedness. This court held in *Public Service Commission* v. *City of Helena,* 52 · Mont. 527, 541, 159 Pac. 24, that the word "revenue" in section 6 of Article XIII means "net revenue." The estimated increase of net revenues under the proposed contract, as compared with the net revenue under the present plan of operating the city's water plant, is very material, and plaintiff has produced nothing that discredits the estimates submitted on this point, and from all the facts given in support of the estimated increase in the revenues, if the arrangement proposed is entered into, and such estimates we think are reasonable from the circumstances outlined, instead of an injury to the plaintiff or any of the other bondholders, such arrangement would be of benefit to all parties concerned, and particularly to the benefit of the plaintiff and all other bondholders; and as plaintiff would suffer no injury under such arrangement, it cannot be heard to complain.

The present expense of operating the city's water plant is shown to be $10,375 for pumping and pipe-line repair; and it is contended that these items of operating cost can be eliminated entirely under the proposed contract, and in lieu thereof a much better and more reliable water supply can be obtained by buying

the water from the Water Conservation Board, and these facts are practically admitted by the plaintiff; at least plaintiff has furnished no facts nor arguments that tend to discredit the correctness of such estimate and no reason why it may not be reasonably expected that such estimate can be realized. Certainly, pumping and pipe-line repair come under the head of operating expense, and if in lieu of expenses to the amount of $10,375 for pumping and pipe repair $6,000 can be expended to procure a more ample and abundant water supply from the Water Conservation Board, we see no reason why such arrangement should not be made. Expenditure for one is as much operating cost as the other, and no injury done to any interested party. This being true, there is no merit in plaintiff's contention that using a part of the revenues realized from water sales under a plant established and maintained by virtue of the provisions of section 6 of Article XIII of the Constitution violates any of the provisions of that section.

The second contention of the plaintiff is that the proposed arrangement, if entered into, will alter the terms of the contract between the plaintiff and the city of Conrad. This contention is no doubt based on the assumption that the payment of $6,000 annually to the Water Conservation Board by the city of Conrad would reduce the income realized from the water sales from the city water plant to a point below what is realized from such sales under the present system. We think this contention has been fully answered by what has already been said.

The third contention is that the plaintiff will be deprived of its property without due process of law, and this contention, also, has been fully answered by what has been said under the first contention noted.

The fourth contention is that the proposed contract to be entered into is simply a subterfuge and an attempt by such method to deprive the plaintiff of its payments by making it appear that the Water Conservation Board is the owner of said addition, but in fact the contract as proposed is one involving the terms of debtor and creditor. We think by what we shall presently show and from citations of numerous decisions in this and other juris-

dictions that this contention is without merit as applied by the plaintiff in the instant case.

The fifth contention is that the proposed indebtedness will run to exceed the length of time for which cities are authorized to incur indebtedness, and we will take up this contention here in order to direct our attention more fully to the more important contention under the fourth heading just mentioned.

In the case of *State ex rel. Great Falls Water Works* v. *Mayor and City Council of City of Great Falls,* 19 Mont. 518, 49 Pac. 15, this court held that in making such a contract as the one under consideration, the municipality acts under its proprietary powers and not under its legislative, public or governmental powers, and it was there held that the powers granted a city by the legislature to contract for and procure a water supply are plenary and unlimited save by the duty to exercise them with reasonable discretion.

It does not clearly appear whether the plaintiff bases his contention on the ground that the contract to run for thirty years would be illegal for the reason that it is contrary to any specific statutory provision, or that it is illegal on the ground of binding successors in office. The latter contention is met and concluded by the decision in the case of *State ex rel. Veeder* v. *State Board of Education,* 97 Mont. 121, 127, 33 Pac. (2d) 516, and *Bennett* v. *Petroleum County,* 87 Mont. 436, 288 Pac. 1018, where attention is called to the fact that any legal body, such as the city council of a municipality, is a continuing body, and that the members of such body act as a board and not as individuals.

Referring again to plaintiff's contention four, we think the vital questions presented by the case at bar are determined by the consensus of opinion drawn from the following references and citations: Where a municipal corporation obligates itself to pay a certain sum annually for a certain period for services to be rendered annually, during the whole of such period, the obligation to pay does not arise until or unless the services are rendered, and the total amount it has obligated itself to pay is not to be considered as a part of its indebtedness. (*City of Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43

L. Ed. 341; *Keihl* v. *South Bend,* (C. C. A.) 76 Fed. 921, 36 L. R. A. 228; *Toomey* v. *Bridgeport,* 79 Conn. 229, 64 Atl. 215, 7 Ann. Cas. 148.)

It is generally held that a limitation upon municipal indebtedness is not violated by an obligation which is payable out of a special fund if the municipality is not liable to pay the same out of its general fund should the special fund prove insufficient, and the transaction by which the indebtedness is incurred cannot in any event deplete the general resources of the municipality. (*State ex rel. Blume* v. *State Board of Education,* 97 Mont. 371, 34 Pac. (2d) 515, and cases cited; *Quill* v. *Indianapolis,* 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681; *City of Laporte* v. *Gamewell Fire Alarm Telephone Co.,* 146 Ind. 466, 45 N. E. 588, 58 Am. St. Rep. 359, 35 L. R. A. 686; 19 R. C. L. 985.) The creditor, however, must look to the fund alone for his recompense, and if the municipality is liable generally, an indebtedness is created within the meaning of the debt limit provisions. (Note, 37 L. R. A. (n. s.) 1070.)

It is a general rule that indebtedness, within the meaning of the constitutional or statutory debt limitation imposed upon a municipality, cannot arise unless there is a legal, equitable or moral obligation to pay a sum of money to another who occupies a position of creditor and who has a legal or moral right to call upon or constrain the debtor to pay. (19 R. C. L. 979, and cases cited.)

In recent cases, "by the great weight of authority a municipality or other political subdivision does not create an indebtedness or liability within the meaning of the constitutional or statutory debt limitation by purchasing property to be paid for wholly out of the income or revenue to be derived from the property purchased." The foregoing quotation is taken from 72 A. L. R., page 688, and cases from the federal courts and from numerous state courts are cited in support of the proposition. In the annotation there referred to, the doctrine has been held to apply to the purchase by municipalities of waterworks, electric light plants, and other public utilities operated by cities. Among the cases cited is *Butler* v. *Ashland,* 113 Or.

174, 232 Pac. 655, where it was said that a purchase of a certain amount of water from an irrigation district did not create an indebtedness within the meaning of the constitutional limitation where payment therefor shall be made solely from the revenues received by the city from the sale of the water. And in *Jones* v. *Corbin*, 227 Ky. 674, 13 S. W. (2d) 1013, it was held that a lease on machinery for the improvement of a municipal light and water plant with the option in the city to purchase the same, providing that the amount to be paid as rental and purchase price shall be paid exclusively out of a fund composed of revenue derived from the light and water plant, does not create an indebtedness within the meaning of the constitutional debt limitation.

On pages 691 to 696 of 72 A. L. R., it is stated: "As will be noted in subsequent subdivisions the reason why the purchase of a public utility by a municipality does not give rise to an indebtedness is that the credit of the municipality is not pledged." Citing *Shelton* v. *Los Angeles*, 206 Cal. 544, 275 Pac. 421. And it is further said, citing the case of *City of Bowling Green* v. *Kirby*, 220 Ky. 839, 295 S. W. 1004, 1008, that "if the creditor may compel the city to pay the indebtedness in some way other than by the special fund created from revenues of the property acquired, there is an indebtedness within the meaning of the constitutional debt limit provision." Another phase of the question is presented in the case of *Village of East Moline* v. *Pope*, 224 Ill. 386, 79 N. E. 587, where it was held that "bonds issued to pay for a system of water works constructed by a village, payable exclusively out of funds derived from the special tax levy and the net revenues of the water works to be constructed, were held to constitute an indebtedness of the village within the meaning of the constitutional debt limitation, in so far as payment shall be made out of the tax levy." In *Searle* v. *Haxtun*, 84 Colo. 494, 271 Pac. 629, it was held: "The fact that the revenue bonds proposed to be issued are for the purposes of enabling the city to make extensions and improvements to an existing electric light plant, and that the income of the whole property, both from the proposed improvements or ex-

tensions and from the existing plant, is pledged for the payment of the bonds, has been held not to constitute the bonds an indebtedness of the city within the meaning of the constitutional debt limitation, since there is no difference in this respect between a promise or pledge of future income of property which now has an income, and a promise or pledge of the future income property proposed to be acquired." In *Bell* v. *Fayette*, 325 Mo. 75, 28 S. W. (2d) 356, the supreme court of Missouri said: "A purchase of engines and machinery by a city for an addition to its electric light plant, to be paid for exclusively from that part of the earnings of the plant representing the savings in the cost of reduction of electricity effected by the installation of the engines and machinery purchased, was held not to create an indebtedness within the meaning of the constitutional debt limitation, especially where the contract of purchase expressly provided that the purchase did not create any liability or general obligation on the part of the city, and that no taxes, general or special, should ever be levied for the payment of installments to become due on the machinery and engines, and that the credit of the city was not pledged therefor."

A summary of all of the numerous decisions relating to the questions involved here leads to the following conclusion: (a) That a contract to purchase property by a municipality does not give rise to an indebtedness or liability within the meaning of the constitutional or statutory debt limitation where the purchase price is payable exclusively from income or profits to be derived from the property purchased; (b) where the property purchased is for improvements to a plant already owned by the municipality and the revenue of both the existing plant and of the additions or improvements purchased is pledged or set aside for the payment of the purchase price of the latter, doubt has been expressed as to whether or not an indebtedness is incurred. The weight of authority, however, supports the view that such a transaction does not create a debt or liability where no mortgage or other lien is placed on existing property of the city, but it is otherwise where a mortgage or lien is imposed upon property already owned by the municipality, or upon other prop-

erty in addition to that purchased. The weight of authority also is that the mortgaging of property purchased to the party from whom it is purchased is not a violation of the debt limitation provisions.

Plaintiff is not entitled to any relief and accordingly the application for the writ is denied and the proceeding dismissed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.