**WARD v. CITY OF BIG SPRING.**
No. 2246.

Court of Civil Appeals of Texas. Eastland.
March 6, 1942.

Rehearing Denied April 17, 1942.

Leslie Humphrey, of Wichita Falls, for appellant.

Coffee & Coffee, of Big Spring, for appellee.

GRISSOM, Justice.

Joe E. Ward sued the City of Big Spring for damages alleged to have been suffered by reason of a breach of a contract to employ him to prepare the final plans and specifications and supervise the construction of a water works project for the City. The City's general demurrer to Ward's petition was sustained, he declined to amend and the case was dismissed. Plaintiff has appealed.

Plaintiff alleged that in June, 1935, he was employed by the City to make an investigation and report of a water supply and prepare engineering information necessary to apply to PWA for a loan and grant to construct the desired improvements and to assist the City in obtaining said loan and grant, for which services the City agreed to pay him $2,000. That the City also employed him conditionally to prepare final plans and specifications for the improvements and to supervise their construction for which the City agreed to pay plaintiff five per cent of the cost of construction. He alleged that the part of the contract for which he was to be paid $2,000 as aforesaid was performed, and said services paid for, but the City, although it built the improvements, breached the contract and refused to permit plaintiff to prepare the final plans and specifications for the improvements finally decided upon and supervise their construction. Plaintiff alleged, among other things:

" * * * That the real employment under said contract, conditioned that the City constructed said improvement, was the employment of said plaintiff as an engineer to prepare the plans and specifications and supervise the construction of the improvement, but first it was necessary to determine the nature of the improvement and in order to determine the same it was necessary to employ the services of a competent experienced engineer, and when

such employment was made it was so provided in said contract that the engineer should recommend the nature of the improvement, the source of the supply of water, as well as the expense necessary to avail the City thereof. The preparation of the application under Section I of said contract merely involved the laying out of a plan for an additional water supply, and the estimated cost thereof and the assembling of such data necessary to apply to the Federal Emergency Administration of Public Works for a loan and grant to finance such construction, and while the city was not obligated under said contract to accept said plan or to make said improvement, nevertheless it was a conditional contract, which required the City, in the event it did accept the plan to secure the loan and grant and make the improvement, to employ the plaintiff and none other as an engineer to make the plans and specifications therefor and to supervise the construction, and required the City to pay the plaintiff the compensation therefor provided in the contract, to-wit, 5% of which was to be paid when the grant was obtained and the other 2½% to be paid as the work progressed; that therefore the whole contract was the true consideration which induced the plaintiff to lay out the program under Section I of said contract. The conditional consideration for the making of the plans and supervising the work in the event the program was accepted by the City and the work undertaken and performed was the inducement and consideration for the plaintiff, as well as the defendant, to undertake the performance of said contract as a whole."

Plaintiff alleged he performed the contract, insofar as it provided for laying out the plans for the improvements under Section I of the contract; that the city recognized his performance and paid him $2,000; that the contract provided, in addition to the services to be rendered under Section I, that plaintiff was to prepare the final plans and specifications and supervise the construction. Plaintiff alleged the City accepted his report and program; that the City made application to PWA for a loan and grant for the construction of the water works as a self-liquidating project; that the City's application to PWA provided that if the Government offered to assist in financing the construction "the City, if it accepted such offer, would sell its obligations in an amount, together with

the grant, which would be sufficient to bear the cost of the construction." That in said written report signed by the City, which was alleged to be a part of the contract and an adoption by the City of the nature and extent of the improvements to be made, it was provided that plaintiff was to be the sole engineer employed. Plaintiff alleged the break-down of the plans as embodied in said report to PWA listed among other items the following: "Engineering, architectural and other fees for technical services, $22,650." That the project as embodied in said application was substantially the same project which the city thereafter constructed and substantially that which plaintiff recommended. Plaintiff further alleged:

"In this connection, plaintiff says that while said contract in itself did not create an unconditional debt on the part of the City to pay the plaintiff the sum of 5% for the preparation of the necessary plans and specifications and the supervision of the construction of the work, nevertheless it did provide a conditional obligation upon said city to do so in the event the funds for the construction of said improvement became available, and the work was undertaken and performed by the City; that the City, availing itself of the services of this plaintiff and based upon his surveys, engineering data, and plans, applied as aforesaid to the Federal Emergency Administration of Public Works for a grant of $225,000.00, agreeing that in the event the grant was obtained that it would issue its obligations in accordance with the constitution and laws of the State of Texas to further finance such grant to the extent of $500,000, including in said $500,000 the grant from the Federal Government, and thereupon an election was held and bonds of the City voted in accordance with the constitution and laws of the State of Texas, and regularly sold, sufficient together with the grant applied for to fully finance said project; that the plaintiff presented to the Federal Emergency Administration of Public Works the application executed on behalf of the City and the Federal Emergency Administration of Public Works made a grant of $225,000, which, together with the obligations of the City, as aforesaid, aggregated $500,000, the estimated cost of such improvement; that when such funds were obtained the contract made by the City with this plaintiff to employ him to prepare the plans and specifications and to

supervise the construction became an unconditional obligation on the part of the City to pay to the plaintiff the compensation provided for in said contract of 5% of the cost of the construction; that when the debt became an unconditional debt it became a part of the cost of the project and provision was then made for its payment out of revenues in existence and coming into existence, and were to be paid as aforesaid with the moneys received from the Federal grant and from the sale of the obligations of said City made for the purpose of financing the water-improvement project; that the debt due this plaintiff then became an unconditional debt, a part of the cost aforesaid of the construction of such project, and at such time the City had then made provision to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least 2% thereon in accordance with the constitution and laws of the State of Texas, and that while the contract made before the application to the Federal Emergency Administration of Public Works did provide that the amount and extent of the improvements was left within the discretion of the City, nevertheless when the City did outline a definite program in its application to the Federal Emergency Administration of Public Works and adopted the plan outlined by the plaintiff the contract became certain, and that the application of said city became a part of the contract and that the city was obligated in good faith and in good conscience to continue the employment of plaintiff under its written contract aforesaid for the preparation of the plans and specifications and for the supervision of the work aforesaid, and when it undertook the performance of said project it was its duty under the contract, to live up to it in respect to the employment and compensation of the plaintiff herein."

Plaintiff alleged that as a result of his work the City obtained a grant of $225,000; that while plaintiff was carrying out his part of the contract and after the plaintiff had performed substantially all the services necessary to perform in respect to the preparation of the plans and specifications for said plant, he was discharged by the City and other engineers were employed on July 18, 1938. Plaintiff alleged the City constructed the improvements substantially as originally planned and outlined by plaintiff, according to the general plans and specifications, survey and engineering data,

except for minor details, as furnished by plaintiff. That the improvements were made at a total expenditure to the City of $497,537.64, for which the City was bound under its contract to pay plaintiff 5% thereof.

In the contract, which was attached to and made a part of the petition, the City was designated as party of the first part and Ward as party of the second part. That part of the contract relative to the preparation of plans and specifications for the project as finally determined to be built by the City and for the supervising of its construction and pertinent to questions involved is as follows:

"Section II

"Party of the Second Part agrees to and shall furnish all surveying and drafting equipment, all stakes, rodmen, engineers and all labor and equipment needed to prepare all necessary plans and specifications for the construction of the proposed improvements and shall prepare and furnish such necessary plans and specifications, and Party of Second Part shall also supervise the construction of the proposed improvements and shall furnish at all times adequate inspection and supervision.

\* \* \* \* \*

"Section IV

"Party of First Part agrees to and shall pay to Party of Second Part for engineering services covering the preparation of the plans and specifications and the supervision of construction of the proposed improvements, as hereinabove referred to, the amount of the two and one-half percent (2½%) of the cost of the work authorized by Party of First Part for making the surveys and preparing the plans and specifications for the work authorized by Party of First Part, and the amount of two and one half (2½%) percent of the total cost of the work actually constructed for engineering supervision and inspection.

"Upon obtaining money from the Federal Emergency Administration of Public Works for constructing the proposed improvements, the Party of First Part shall pay to Party of Second Part two and one half per cent (2½%) of the estimated cost of the work for which surveys, plans, and specifications were authorized by Party of First Part; and after the work has begun Party of First Part shall pay to Party of Second Part each month two and one half per cent (2½%) of the cost of the work

done during the month, and the total amount of monthly estimate of the contractor shall be the basis for calculating the amount due Party of Second Part.

"Section V

"It is understood and agreed by and between the parties hereto that the amount and extent of improvements applied for or made through Federal Emergency Administration of Public Works is left entirely with the discretion of First Party. In event the amount of improvements constructed shall amount to as much as $400,000 actual cost, Second Party covenants and agrees that he will reimburse to First Party $1,000 of the amount provided in Section III hereof, to be paid to Second Party by First Party; in event the actual costs of construction on improvements amounts to less than $400,000, in such event Second Party agrees to reimburse to the City of Big Spring such proportion of $1,000 as the actual cost of construction actually bears to the sum of $400,000. It is agreed that the amount so reimbursed by Second Party to First Party shall be taken out of and deducted from the last estimates due to Second Party as provided for in Section IV of this contract. In event there is no actual construction under the terms of this contract, then Second Party shall be under no obligation to pay back to First Party any part of said $2,000 provided for in Section III hereof.

"Section VI

"It is further understood and agreed by both parties of this contract that it shall be in full force and effect from date of execution until the completion of the contemplated improvements, mentioned herein, and the final payment for engineering services, described herein, is made to Party of Second Part."

It is intimated the trial court sustained the general demurrer on the theory that plaintiff's petition failed to show compliance with Sections 5 and 7 of Art. 11, Constitution of Texas, Vernon's Ann.St. or that said provisions were inapplicable. Said sections provide no debt shall be created by a City unless at the same time provision is made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent.

Appellant's first proposition is to the effect that the contract was not violative of said constitutional provisions because no debt was created until the creation of sufficient funds to satisfy it. (That part of the debt with reference to the payment of $2,000 for the making of the original survey and preparation of plans for application to PWA for a loan and grant are disregarded by both parties. They assume, correctly we think, that said amount was intended to be and was paid out of the current funds for the year in which that work was contracted for and done by plaintiff.) Appellant points out that Section IV of the contract provides that upon obtaining the money the City is obligated to pay him 2½% of the estimated cost of the water works finally determined to be built by the City, if any, and that the additional 2½% is to become due and payable monthly as the system is constructed. And, that at the time of the execution of the contract the City retained the right to decide how much, if any, water works it desired to construct, as shown by Section V of the contract. Appellant points to the fact that the cost of engineering was considered as an integral part of the cost of the project, as shown by the City's report to PWA, and concludes, therefore, plaintiff's fee would not be an added burden to the City upon issuing their bonds and receiving the PWA grant, but that his fees were included in said funds and payable out of said funds in part when received and when the water works project to be constructed, if any, was finally determined by the City, and in part as the construction thereof, if any, progressed and that the fees were payable out of said funds. He asserts the contract, considered as a whole, provides only for a conditional obligation on the part of the City, conditioned or contingent upon the City deciding how much, if any, work it desired to authorize, how much funds it desired to make application for, and how much funds it was actually able to raise. Appellant contends the contract provides for no indebtedness by the City that comes into existence before the time it had the funds out of which it was to pay appellant.

In 26 C.J.S., Debt, p. 4, it is said: "While the sum of money may be payable upon a contingency, yet in such case it becomes a debt only when the contingency has happened * * *." See, also, 17 C.J. 1377. In 44 C.J. 1126, it is said: "Therefore, an obligation imposing on the municipality merely contingent future liability does not create an indebtedness before the

happening of the contingency, at least where the arising of the contingency is solely within the control of the municipality and can occur only by its subsequent choice voluntarily made * * *. Also, a contract by a municipal corporation which, when properly construed, does not fix the amount of the liability from its date does not create a present indebtedness, within the meaning of a constitutional restriction on municipal indebtedness; and, * * * an obligation to pay for work to be performed in the future and paid for when performed does not become an indebtedness until the performance of the work." See, also, 38 Am.Jur. 109 and 143, et seq.

In Dillon's Municipal Corporations, Vol. 1, 5th Ed., p. 352, it is said:

"But it is essential to the idea of a debt that an obligation should have arisen which entitles the holder thereof to receive from the municipality a sum of money which the latter is under a duty to pay without regard to any future contingency within the control of the municipality.

&ast; &ast; &ast; &ast; &ast;·

"[p. 361] The Courts have therefore recognized a distinction between a debt in the sense of the Constitution, and a contract for a future indebtedness to be incurred upon the performance by the contracting party of the agreement out of which the debt may arise. They also recognize a distinction between the latter case and one where an absolute debt is created at once, as by the issue of bonds for the erection of a public improvement, though such debt is payable in the future by installments. In the one case the indebtedness is not considered to be created until the consideration has been furnished; in the other the debt is created at once, the time of payment only being postponed."

If the City for any reason determined, after the execution of the contract between the parties to this suit, not to build the proposed water works system there would be no occasion for Ward, or anyone else, to prepare the final plans and specifications or to supervise its construction. After the City succeeded in carrying out its plans and finally determined to build a water works system and then determined the exact kind and amount to be built and obtained the money for the project and for the payment of Ward then, and only then, was the City indebted to Ward for the preparation of final plans and specifications and the City owed nothing to Ward until his work was performed. Before that time the amount of compensation to which Ward would have been entitled, if any, could not have been calculated. Whether a fee would be owing to Ward and, if so, the amount thereof were wholly contingent upon the matters hereinbefore mentioned and were subject to the subsequent decision of the City. There was no debt created, so far as the items in this suit are concerned, at the time Ward and the City signed the contract, and there was no debt created, we think, until funds were in the possession of the City out of which the debt was to be paid. Therefore, there was no debt incurred in violation of said provisions of the Constitution.

After a careful consideration we have concluded the court erred in sustaining the general demurrer upon the theory that the contract violated said constitutional provisions, if such was the reason. Cottle County v. McClintock & Robertson, Tex.Civ. App., 150 S.W.2d 134; McClintock & Robertson v. Cottle County, Tex.Civ.App., 127 S.W.2d 319; Dallas Electric Co. v. City of Dallas, 23 Tex.Civ.App. 323, 58 S.W. 153, writ refused; City of Cleburne v. Cleburne Water, Ice & Lighting Co., 14 Tex.Civ.App. 229, 37 S.W. 655; 19 R.C.L. 983; 103 A.L.R. 1173; Rogers v. Oklahoma City, 45 Okl. 269, 145 P. 357; Farmers' State Bank v. City of Conrad, 100 Mont. 415, 47 P.2d 853, 858; Foard County v. Sandifer, 105 Tex. 420, 151 S.W. 523, 525; Commissioners' Court v. Wallace, 118 Tex. 279, 287, 15 S.W.2d 535; Brown County Imp. Dist. v. Austin Mill & Grain Co., 135 Tex. 140, 145, 138 S.W.2d 523.

Appellee cites, as sustaining its counter point to the effect that the contract violates said constitutional provisions, Stevenson v. Blake, 131 Tex. 103, 113 S.W.2d 525; McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322; City of Ft. Worth v. Reynolds, Tex.Civ.App., 190 S.W. 501; Panhandle Const. Co. v. City of Spearman, Tex.Civ. App., 83 S.W.2d 425; Tackett v. Middleton, Tex.Com.App., 280 S.W. 563, 44 A.L.R. 1143. In Stevenson v. Blake, Wilson County employed attorneys to collect money owing to the county by some of its officials as shown by an audit. The county agreed to pay its attorneys $3,000 and 25 per cent of all sums recovered by judgment. The $3,000 was an absolute debt expressly provided to be paid as follows: $1,000 when the contract was signed, $1,000 on February 15th

of the following year and $1,000 when judgment became final. The 25 per cent was to be paid "when and as collections are made on any such judgments." [131 Tex. 103, 113 S.W.2d 526.] Judge Harvey stressed the fact that the clause of the Constitution here involved regards as an entirety the pecuniary obligation undertaken to be imposed by the contract and stated that the test was whether the parties contemplated that the debt would, in fact, become due at such a time as to be paid out of current revenues for the year in which the contract was made. Since the contract must be regarded as an entirety in determining whether or not said constitutional provisions have been violated and since said contract provided for an absolute debt of $1,000 due in February of the year following the execution of the contract and another $1,000 when judgment became final, and since it was undisputed that the parties contemplated at least three suits that would be appealed to the Supreme Court it was a necessary conclusion that the defense, to-wit, that the parties contemplated the payment out of the revenues of the County for 1935, was not valid, and that the contract violated said constitutional provisions. We have concluded that none of the other cases cited by the appellee are controlling because none of them are based upon a comparable contract. They do not involve a conditional liability as does the instant case.

We think plaintiff's petition based upon the alleged conditional employment of Ward by the City to prepare final plans and specifications and supervise construction of the water works, was not subject to a general demurrer as showing a lack of mutuality concerning said portion of the contract, or that it discloses a lack of consideration, or that it shows a contract too indefinite to be enforced. According to plaintiff's petition, Ward's employment to prepare final plans and specifications and supervise the construction was contingent upon the erection of the proposed water works system. Until the happening of that contingency, that is, the final determination by the City to build a certain water works project, there was no enforcible obligation on the part of the City, but when the City did determine to build a certain system and proceeded to construct it, then the City was bound, under the contract alleged, to use plaintiff as its engineer to prepare the final plans and supervise construction.

In 13 C.J. 335, it is said: "Although there is a lack of mutuality in the beginning, this may be cured by the other party subsequently binding himself also by promise or act. Thus if A promises B to pay him a sum of money if he will do a particular act or make a particular promise, and B does the act, the promise thereupon becomes binding, although B at the time of the promise does not engage to do the act or to make the promise. In the intermediate time the obligation of the promise is suspended, for until the performance of the condition of the promise there is no consideration, and the promise is nudum pactum; but, on the performance of the condition by the promisee, it is clothed with a valid consideration which relates back to the promise, and it then becomes obligatory. Therefore a contract to pay a certain sum, on the performance of certain acts by another becomes a binding obligation on the promisor on the performance of said acts before the revocation of the contract, although it expresses no consideration past or present and contains no promises that such acts shall be performed." 17 C.J.S., Contracts, § 100.

It has been held that a contract is not wanting in mutuality because the liability of one or both parties is contingent upon the happening of a condition precedent. 13 C.J. 333; 17 C.J.S., Contracts, § 100. It has also been definitely decided that the fact a promise given for a promise is dependent upon a condition does not affect its validity as consideration. 13 C.J. 330; 17 C.J.S., Contracts, § 99. The test of mutuality is applied when it is sought to enforce the promise and not as of the time when the contract was made. 10 Tex.Jur. 170. In Rose v. San Antonio & M. G. Railroad Co., 31 Tex. 49, 59, the Railroad Company instituted suit against Rose to recover on a written instrument wherein Rose promised to pay the Railroad Company $1,000 when the Company constructed its road between two towns and kept the road in operation for a period of one year. The Railroad alleged the conditions upon the happening of which the note became payable had taken place. Rose defended, among other things, upon the ground of want of mutuality in the contract. Rose contended that "Inasmuch as the railroad company is under no ob-

ligations to make the road, therefore the maker of the instrument should not be bound to pay when the same is made." This contention was overruled by our Supreme Court. The opinion quoted from Parsons on Contracts as follows:

"Here it is said that the party making the promise is bound, while the other party is at liberty to do any thing or nothing. But this is a mistake. The party making the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the beginning of the first promise; until such engagement or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement on the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation."

The court further said:

"The doctrine thus laid down by Professor Parsons is fortified by authority quoted in a note to the above, that 'the binding obligation of contracts or promises to do something, provided, or on condition, or when the other party shall do some other thing, is well recognized.' As the answer does not state that Rose either withdrew or attempted to withdraw the promise till after the promisees had compiled with the conditions of payment of the same, the demurrer to the same was properly sustained.

"The second defense is want of consideration. The authority already cited is deemed amply sufficient in reply to this defense."

We think it cannot be said plaintiff's petition shows that the agreement of Ward to do the initial work for $2,000 was not a consideration for the agreement relative to the final work. The implications of paragraph 5 of the contract are to the contrary.

Our conclusions, we think, are also compelled by the following authorities: Dallas Trust & Savings Bank v. Wortham Ind. Sch. Dist., Tex.Civ.App., 25 S.W.2d 174, writ refused; Taber v. Dallas County, 101. Tex. 241, 250, 106 S.W. 332; Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; United Appliance Corp. v. Boyd, Tex.Civ.App., 108 S.W.2d 760, 764; Gable v. Frigidaire Corp., Tex.

Civ.App., 121 S.W.2d 456, writ dismissed; Moon Motor Car Co. v. Moon Motor Car Co., 2 Cir., 29 F.2d 3; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N.E. 774, 31 L.R.A. 529; Grand Prairie Gravel Co. v. Joe B. Wills, Tex.Civ.App., 188 S.W. 680, writ refused; Cullinan v. Standard Light & Power Co., Tex.Civ. App., 65 S.W. 689; 17 C.J.S. 449, Contracts, § 100.

We have considered all of appellee's counter points and authorities and have concluded plaintiff's petition is not subject to a general demurrer.

The judgment is reversed and the cause remanded.